Filed 5/29/13  Lanning v. Kramer CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| NANSEE LANNING et al., | B227686 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. SC099461) |
| v. | |
| ANDREW KRAMER et al., | |
| Defendants and Respondents. | |
| ANDREW KRAMER, | B231249 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. SC107434) |
| v. | |
| GEORGE LANNING et al., | |
| Defendants and Respondents. | |

APPEALS from judgments of the Superior Court of Los Angeles County, Norman P. Tarle, Judge.  Affirmed in part; reversed in part.

Silverman Sclar Shin & Byrne; Silverman, Shin, Byrne & Gilchrest and Robert M. Gilchrest for Nansee Lanning, Justin Lanning, George Lanning and The George and Nansee Lanning Revocable Trust.

Ferguson Case Orr Paterson, Wendy C. Lascher and John A. Hribar for Andrew Kramer, Matthew Kramer, Rosalinda Kramer, West Hollywood Center for Compassionate Healing, Inc. doing business as The Sunset Shop, Inc.

_____

## INTRODUCTION

We consider together two appeals from judgments in two trial court cases which share a common factual background and involve some of the same parties. The first, No. B227686, is from a 2010 judgment in *Lanning v. Kramer*, Los Angeles County Superior Court, No. SC099461. The plaintiffs are George Lanning (George L.), his wife Nansee Lanning (Nansee L.), their son Justin Lanning (Justin L.), collectively the Lannings, and The George and Nansee Lanning Revocable Trust, for which the trustees were George L. and Nansee L. The defendants are Andrew Kramer (Andrew K.), his mother Rosalinda Kramer (Rosalinda K.), his son Matthew Kramer (Matthew K.), collectively the Kramers, and his business, West Hollywood Center for Compassionate Healing, Inc. (WHCCH), doing business as The Sunset Shop, Inc.

The second appeal, No. B231249, is from a 2010 judgment in *Kramer v. Lanning*, Los Angeles County Superior Court, No. SC107434. The plaintiff is Andrew K. The defendants are George L., Nansee L., The Lanning Family Trust, George L. and Nansee L. as trustees, and The George and Nansee Lanning Revocable Trust, George L. and Nansee L. as trustees.[1]

_____

[1] The Lanning Family Trust was in effect at the time the events leading to this litigation began, and it was terminated during the course of the litigation between the

2

The Lanning Trust owned the commercial building and other real property commonly known as the Sunset Building, at 8919-8923½ West Sunset Boulevard in West Hollywood.  The building has commercial and residential units.  In September 2006, George L. and Nansee L., as Trustees of the Lanning Trust, entered into a written lease with Andrew K. for a portion of the Sunset Building, specifically 8921, 8923 and 8923½ West Sunset Boulevard (Premises)[3] for a medical marijuana dispensary known as The Sunset Shop (Dispensary).

In January 2007, Andrew K. and the Trust entered into an escrow agreement for Andrew K. to purchase the Sunset Building from the Lanning Trust.  Andrew K. paid the Trust a $1 million deposit to be returned if the purchase did not close by a specified date.  The Lanning Trust gave Andrew K. two promissory notes, one for $600,000 and another for $400,000, to secure repayment of the deposit to Andrew K.  The purchase did not close, and the parties cancelled the agreement.

In September 2007, George L. sent Andrew K. a letter offering to purchase the Dispensary for a purchase price of $1,450,000 plus $300,000 for inventory.  In November or December, Andrew K. and George L. with Nansee L. executed a term sheet entitled Deal Points as of 11/7 (Deal Points Memo).  The Deal Points Memo included various

---

parties.  The George and Nansee Lanning Revocable Trust was formed and remained in effect at the time the judgments at issue herein were entered.  For convenience, we refer to the trusts as the Lanning Trust or the Trust.

[2]    Additional factual background appears in the discussion, *post*, in conjunction with the issue on appeal to which the background relates.

[3]    Andrew K. subsequently surrendered possession of the unit at 8923 West Sunset Boulevard in December 2007, when George L. took over the unit to serve as his residence.

dollar amounts, descriptive phrases and dates, but no sentences or paragraphs tying them together.

In late December 2007, George L., Nansee L. and Justin L. took over operation of the Dispensary. They received all revenues from its operation. Andrew K. remained involved, and the Lannings paid him a consulting fee. On July 15, 2008, the Lannings met with Andrew K. and informed him the consulting arrangement was terminated.

On July 17, 2008, before the Lannings arrived to open the Dispensary for business, Andrew K. had the locks on the Premises changed, took over the Premises and had his mother, Rosalinda K., his son, Matthew K., and security personnel come to the Premises. The Lannings were not allowed to enter the Premises; they were confronted and warned to leave by members of the Kramer group. Justin L. called law enforcement for assistance. When the sheriff's deputies arrived, Rosalinda K. told the deputies that the Kramers had the right to be on the Premises and showed them a copy of the Lease. The deputies declined to take further action on the basis that the dispute was a civil matter. Members of the Kramer group entered the residence of George L. and took property the Lannings used in operating the Dispensary.

The Lannings initiated litigation against the Kramers as more fully explained below. The Kramers subsequently initiated action against them. As a result of a judgment of possession entered in favor of the Lannings in one of the actions, on June 8, 2009, the Lannings regained possession of the Premises and the Kramers and related business entities vacated the Premises.

## PROCEDURAL BACKGROUND

The Lannings filed their complaint in *Lanning v. Kramer* (Super. Ct. L.A. County, 2010, No. SC099461) on August 19, 2008 (Main Action). On September 2, 2008, George L., as trustee for the Lanning Trust, filed an unlawful detainer action against

Andrew K. (*Lanning v. Kramer* (Super. Ct. L.A. County, 2009, No. 08U02832)) (UD Action).

The Lannings filed their Second Amended Complaint (SAC) in the Main Action on September 4, 2009. Three causes of action related to the Kramers' conduct in retaking and retaining possession of the Premises from July 18, 2008 to June 8, 2009: forcible entry and forcible detainer of the Premises (second), trespass (third), and intentional infliction of emotional distress (fourth). Five of the causes of action arose from the alleged agreement by Andrew K. to sell the Dispensary and its inventory to the Lannings (Sale Agreement). The causes of action alleged Andrew K.'s breach of the agreement to sell the Dispensary to the Lannings (first) and, for the period of forcible detainer, "intentional interference with contractual relations with the Sunset Shop's customers" (fifth), "conversion of the Sunset shop and all its inventory and business equipment" (sixth), "an accounting of the Sunset Shop's drug revenue" (seventh), and "a constructive trust of the Lannings' estimate of the profits of the marijuana dispensary" (eighth). The Lannings also alleged, for the duration of the detainer period, breach of an implied-in-fact lease agreement against Andrew K. for rent and damage to the Premises (ninth), and unjust enrichment from Andrew K.'s Dispensary operation during the forcible detainer period (tenth).

The Lannings requested relief as follows: a sum in excess of $13,500,000 in general damages, including, inter alia, revenues the Lannings lost from the sale of medical marijuana as the result of Andrew K.'s forcible detainer and revenues Andrew K. collected from the sales during forcible detainer, punitive damages for the intentional torts, and attorney's fees and costs.

In the UD Action, the trial court issued a judgment of possession to George L., as trustee of the Lanning Trust, in April 2009. The judgment was enforced and, on June 8, 2009, the Lannings took possession of the Premises from the Kramers.

5

In January 2010, Andrew K. filed a motion for summary judgment in the Main Action seeking dismissal of the SAC. The trial court granted the motion for summary judgment as to the first, fifth, sixth, seventh, and eighth causes of action.[4]

The trial court found that the alleged Sale Agreement was void, in that the terms were too uncertain and vague to be enforceable. The court continued that, even if the agreement were sufficiently certain, it would be unenforceable, in that it would be unlawful under the federal Controlled Substances Act (21 U.S.C. §§ 812, 841(a)(1), 844). The court found that the "performance of this agreement to buy/sell a marijuana dispensary and $300,000 worth of inventory . . . would require the transfer of possession of marijuana, a controlled substance . . . with the intent to distribute that" marijuana. The court noted that marijuana is identified as a "controlled substance" subject to the Act. (21 U.S.C. §§ 802(6), (16) & 812(c), Schedule I, (c)(10).) The court stated that California's "Proposition 215 does not conflict with the Controlled Substances Act because in passing Proposition 215, California has merely exercised its state powers not to punish certain marijuana offenses under state law when a doctor has recommended its use to treat a medical condition." If the dispensary sale transaction were legal under California law, according to the court, that "does not change the fact [that] under federal law, any person's knowing and intentional acts 'to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance' [such as marijuana] are unlawful. 21 USC § 841(a)(1); see also 21 USC [§] 844(a)."

The Lannings then filed a third amended complaint (TAC) pursuant to the trial court's grant of leave to amend, to add the Lanning Trust as a named plaintiff and remove the former first, fifth, sixth, seventh and eighth causes of action. The Lannings' remaining causes of action were for forcible entry and detainer (first), trespass (second),

---

**4** The parties refer to the trial court's ruling as a partial summary judgment. Technically, it was a summary adjudication of the specified causes of action. (Code Civ. Proc., § 437c, subd. (f)(1).) We nonetheless refer to the "summary judgment" for purposes of this appeal.

6

intentional infliction of emotional distress (third), breach of implied in fact contract (lease agreement) (fourth) and unjust enrichment (fifth). In paragraph 74, the Lannings expanded the list of ways Andrew K. had been unjustly enriched to include (a) money they paid Andrew K. prior to December 26, 2007, (b) money they paid to Andrew K. between December 26, 2007 and July 17, 2008, the period the Lannings operated the Dispensary, and (c) the benefits Andrew K. obtained while operating the Dispensary during the forcible detainer period.

Andrew K. moved to strike newly added portions of the TAC, except the addition of the Trust as a named plaintiff. After a hearing on the motion to strike, the trial court granted the motion to strike as to certain additions, including but not limited to, the sources listed as unjustly enriching Andrew K. in paragraph 74, items (a), (b) and (c) insofar as (c) sought net profits from Andrew K.'s operating the Dispensary during the forcible detainer period. At the hearing, the court also ruled on the Lannings' motion for leave to amend to add the new portions to the TAC. The requested amendments sought, inter alia, restitution of purchase money paid to Andrew K. pursuant to the alleged Sale Agreement as well as restitution of any benefits, including net profits, obtained by Andrew K. from operating the Dispensary during the forcible detainer period. The trial court denied leave to amend "insofar as any claim is added which essentially revives any part of the contract claims which the court previously stated it would not enforce. That includes the claims for rescission of the agreement to purchase the dispensary, claims for damages arising from operation of the dispensary, and legal fees to resolve disputes with the City of West Hollywood over the operations of the dispensary."

In April 2010, Andrew K. filed suit against the Lannings, alleging they had not repaid in full the two promissory notes the Lannings gave as security for the $1 million deposit he paid them in seeking to purchase the Sunset Building in 2007 (*Andrew Kramer v. George Lanning et al.*, 2010, L.A. Super. Ct. case No. SC107434) (Note Action). Andrew K. alleged the Lannings still owed him $408,000 on the second note.

7

The Main Action was tried before a jury in June 2010. In a prior proceeding, the court had found that Andrew K. committed a forcible entry and forcible detainer of the Premises, beginning on July 18, 2008. The jury rendered its verdict on June 23, 2010, finding that Rosalinda K., Michael K. and the remaining Kramer defendants committed a forcible entry and forcible detainer. On this cause of action, the jury awarded damages of $236,613.68 against Andrew K. and $600 each against the other defendants. The jury found the Kramer defendants committed a trespass and awarded damages of $23,286.75 against Andrew K. and $75.88 each against the other defendants. The jury found Andrew K. was liable for intentional infliction of emotional distress, with damages of $25,000 to George L. and damages of $10,000 each to Nansee L. and Justin L. It also found Rosalinda K. and Matthew K. liable for intentional infliction of emotional distress and assessed damages against Rosalinda K. and Matthew K. each for $1,000 for each of the three Lannings.

The jury also found Andrew K. was entitled to a set off in the amount of his security deposit, $23,210.87. The jury found by clear and convincing evidence that Andrew K., WHCCH, and The Sunset Shop, Inc. acted with malice, oppression, or fraud, and accordingly, the Lannings were entitled to punitive damages. However, the jury did not assess any such damages.

The Lannings filed a motion for a new trial on damages only. The Kramers filed a motion for judgment notwithstanding the verdict. The trial court denied both motions. Judgment and notice of entry of judgment were issued in the Main Action on July 16, 2010.

In the Note Action, the trial court sustained the Lannings' demurrer without leave to amend. On December 29, 2010, the trial court entered a judgment of dismissal of the Note Action.

8

## DISCUSSION

## I

## MAIN ACTION

### A. *The Lannings' Contentions*

#### 1. Summary Judgment as to the Causes of Action Related to the Alleged Sale Agreement

The Lannings contend that the trial court erred in granting Andrew K.'s motion for summary judgment as to their causes of action for breach of the alleged Sale Agreement, intentional interference with contractual relations, conversion, accounting and a constructive trust. Specifically, the Lannings claim the trial court erred in ruling that the alleged Sale Agreement was unlawful pursuant to the federal Controlled Substances Act (21 U.S.C. §§ 812, 841(a)(1), 844), that by law, an illegal contract/transaction may not be the basis of an action and, therefore, each of the causes of action was subject to summary judgment, given that existence of a valid sale agreement was an essential element of each of them.

We review a trial court's grant of a summary judgment motion de novo. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860.) Code of Civil Procedure section 437c, subdivision (c), provides that a "motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Initially, a moving defendant has the "burden of showing that a cause of action has no merit," such as by showing "that one or more elements of the causes of action . . . cannot be established," or that there is a complete defense to the cause of action. (Code Civ. Proc., § 437c, subds. (o), (p)(2); *Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 854.) If the defendant meets that burden, "the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action" or

9

as to the defense proffered by the defendant. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, *supra*, at p. 849.) We review the validity of the trial court's ruling and not the reasons given for it by the trial court. (*Byars v. SCME Mortgage Bankers, Inc.* (2003) 109 Cal.App.4th 1134, 1146.)

At the March 9, 2010 hearing on Andrew K.'s motion for summary judgment, counsel for the Lannings began argument by addressing the issue of the illegality of the alleged Sale Agreement under federal law. The court then invited argument on its tentative conclusion that the agreement was void and unenforceable because of its vagueness and uncertainty as to the parties' actual agreement.

The court found the alleged Sale Agreement, the Deal Points Memo, "was incomprehensible . . . . It might be a contract, but, at the same time, it might be a shopping list." There followed brief argument by counsel that the agreement had been partially performed and its terms could be determined from the performance shown by records submitted as exhibits to their supporting declarations. The court found that there remained questions about the authenticity of the documents purported to be records of payments under the agreement. Ultimately, the trial court adopted its tentative decision as its final written decision. It found that "the contract at issue here, it is 'so vaguely expressed as to be wholly unascertainable' and is therefore void. Civ[il] Code [section] 1598." It then went on to address the illegality issue, finding that, in any event, the agreement was illegal and unenforceable.

On appeal, the Lannings do not challenge the trial court's determination that the alleged Sale Agreement was void for uncertainty and vagueness. The record reveals this was not an inadvertent oversight, but rather the Lannings chose to challenge only the court's determination of the agreement's illegality. In their reply brief, for example, they assert that the determination the agreement was void for uncertainty and vagueness "is inconsequential" to their appeal. Where an appellant does not contend the trial court erred in making a determination, the appellant forfeits any claims concerning that determination. (*Quinn v. U.S. Bank NA* (2011) 196 Cal.App.4th 168, 189-190; *Benach v.*

*County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 ["When an appellant fails to raise a point . . . we treat the point as [forfeited].".].)  The Lannings therefore forfeited any claim of error with respect to the trial court's determination that the alleged Sale Agreement was void for uncertainty and vagueness.

Andrew K. maintains that the trial court properly determined that the alleged Sale Agreement was void for uncertainty and vaguenesss, and that was a sufficient basis for the court to grant his motion for summary judgment.  We agree.

When the material facts are undisputed, as in this case, whether a contract exists is a question of law which we independently review on appeal.  (*Bustamante v. Intuit, Inc.* (2006) 141 Cal. App. 4th 199, 208.)  According to Civil Code section 1550, the essential elements of a contract are: "1. Parties capable of contracting; [¶] 2. Their consent; [¶] 3. A lawful object; and, [¶] 4. A sufficient cause or consideration."  "'Under California law, a contract will be enforced if it is sufficiently definite (and this is a question of law) for the court to ascertain the parties' obligations and to determine whether those obligations have been performed or breached.' [Citation.]" (*Bustamante*, *supra*, at p. 209.)  "The material factors to be ascertained from the written contract are the seller, the buyer, the price to be paid, the time and manner of payment, and the property to be transferred, describing it so it may be identified  [Citations.]" (*King v. Stanley* (1948) 32 Cal.2d 584, 589, disapproved on another ground in *Patel v. Liebermensch* (2008) 45 Cal.4th 344, 351, fn. 4.)  Civil Code section 1598 provides:  "Where a contract has but a single object, and such object is unlawful, whether in whole or in part, or wholly impossible of performance, or so vaguely expressed as to be wholly unascertainable, the entire contract is void."

"'[T]he modern trend of the law favors carrying out the parties' intentions through the enforcement of contracts and disfavors holding them unenforceable because of uncertainty.  [Citations.]' [Citation.]" (*Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1192.)  To that end, a "contract will be enforced if it is possible to reach a fair and just result even if, in the process, the court is required to fill in some

11

gaps." (*Ersa Grae Corp. v. Fluor Corp.* (1991) 1 Cal.App.4th 613, 623.) Nevertheless, "[w]here a contract is so uncertain and indefinite that the intention of the parties in material particulars cannot be ascertained, the contract is void and unenforceable . . . . Unless the court has ascertainable provisions of agreement before it, there is no contract on which the court may act." (*Cal. Lettuce Growers v. Union Sugar Co.* (1955) 45 Cal.2d 474, 481.) "To be enforceable, a promise must be definite enough that a court can determine the scope of the duty and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages." (*Ladas v. California State Auto. Assn.* (1993) 19 Cal.App.4th 761, 770.)

It is undisputed that the parties never reduced the alleged Sale Agreement to the customary form of a written contract. George L. sent Andrew K. a letter entitled "'Offer To Purchase' the Dispensary . . . for a 'Purchase Price' totaling $1,450,000 and for $300,000 for 'Inventory.'" There is no signed acceptance of the offer by Andrew K. The parties acknowledge that part of their agreement was the two-page Deal Points Memo. Their separate statements of undisputed facts reveals that the parties did not even agree on what the object was of the Deal Points Memo. According to the Lannings, Andrew K. agreed to sell them the Dispensary. According to Andrew K., he agreed to grant them a license to operate the Dispensary, contingent upon their satisfaction of certain conditions.[5]

The Deal Points Memo was not in the form of a written contract and was virtually devoid of complete sentences. There were dates, dollar amounts and cryptic phrases alongside the amounts, but no indication regarding, for example, who was required to pay or entitled to receive the dollar amounts, when payment was to be made or what the payment entitled the recipient to do or own. The memo states "300,000.00 owed for

---

[5]    In their separate statements of undisputed facts, Andrew K. stated that the Deal Points Memo was a "term-sheet . . . outlining the circumstances under which [the Lannings] would operate the Dispensary." The Lannings stated that it "outlined the terms of the sale of the Dispensary to the Lannings."

remainder," with no identification of what "remainder" is intended or the person responsible for payment or entitled to receive payment. There are references to "Loan taken over" and "Loan Payment," but no identification of the loan or its purpose. The memo states "1,850,000.00 Total Sale for home," but includes no description, legal or by address, of the "home" or identity of the buyer or the seller. There is a handwritten note under the heading "Payment Schedule" which states "$10,000/wk salary until <business> paid in full," but no named recipient or even what "business" must be "paid in full."

According to the Lannings, other terms of the parties' alleged Sale Agreement were implied from the conduct of the parties after they executed the Deal Points Memo. As evidence of the conduct, the Lannings provided sets of handwritten documents described as ledgers, which purportedly were evidence of their payments and debts to Andrew K. under the alleged Sale Agreement. However, the handwritten ledgers were also so vague as to be incomprehensible as evidence of the terms and conditions of the alleged Sale Agreement. Each ledger set forth a brief caption, a column of dates (many with no year designation), a corresponding column of dollar amounts and, in most cases, another column of dollar amounts which sometimes was marked as the balance column.[6] In some cases, there were additional columns, such as initials or what appeared to be a name of a particular type of medical marijuana.

The alleged Sale Agreement lacks clarity and is so vague as to render indiscernible the elements necessary to formation of a contract, that is, the persons contracting, the object of the contract, price or other consideration, time payment is due, or consent by all parties to any such terms and conditions necessary for the enforcement of the agreement. (Civ. Code, § 1550; *King v. Stanley*, *supra*, 32 Cal.2d at p. 589.) The trial court properly determined that, as a matter of law, the alleged Sale Agreement was "so uncertain and indefinite that the intention of the parties in material particulars cannot be ascertained"

---

[6] The captions on the handwritten ledgers were "Cash for Inventory," "Checks Recd Inventory," "Inventory Fronted," "Purchases," "Drew Purchases," "Cash Recd for Business," "Business [unintelligible]," and "Loan."

and, as a result the agreement was void and unenforceable. (*Cal. Lettuce Growers v. Union Sugar Co.*, *supra*, 45 Cal.2d at p. 481.)

The existence of the alleged Sale Agreement was an essential element to the Lannings' first, fifth, sixth, seventh and eighth causes of action in the SAC. Andrew K. met his burden of showing that the Lannings could not establish the essential element, in that the Lannings did not possess, and could not reasonably obtain, evidence needed to prove the existence of the alleged Sale Agreement. (Code Civ. Proc., § 437c, subds. (o), (p)(2); *Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at pp. 854-855.) The Lannings have failed to meet their burden to show a triable issue of material fact exists with regard to the enforceability of the alleged Sale Agreement. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, *supra*, at p. 849.) For these reasons, as a matter of law, Kramer was entitled to the grant of his motion for summary judgment as to the first, fifth, sixth, seventh and eighth causes of action. (Code Civ. Proc., § 437c, subd. (c); *Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1002-1003.)

Inasmuch as the alleged Sale Agreement was in any event void for vagueness and uncertainty, we need not reach the Lannings' contention that the trial court erred in finding the alleged agreement was void for illegality. The result would be the same.

### 2. Preclusion of Restitution Damages for Consideration Paid for Dispensary

As part of the changes to the TAC, the Lannings amended their unjust enrichment cause of action (fifth) to seek restitution of the consideration they paid Andrew K. for the Dispensary as well as disgorgement of Andrew K.'s profits from the Dispensary during the forcible detainer period. As we noted previously, in paragraph 74 in the fifth cause of action, the Lannings expanded the list of ways Andrew K. had been unjustly enriched to include (a) money they paid Andrew K. prior to December 26, 2007, (b) money they paid Andrew K. between December 26, 2007 and July 17, 2008, the period the Lannings operated the Dispensary, and (c) the benefits Andrew K. obtained while operating the Dispensary during the forcible detainer period.

14

The Lannings contend that the trial court erred in granting Andrew K.'s motion to strike the additions. The Lannings argue that the court's comment that restitution damages were not recoverable, in that determination of them required reference to the void Sale Agreement, was not supported by the law of unjust enrichment. They cite cases in which some part of a contract was void as illegal, precluding damages based on breach of contract, but the plaintiff was deemed entitled to equitable relief, i.e., restitution, "for any amounts he may have expended in [the] performance of the agreement." (*Dunkin v. Boskey* (2000) 82 Cal.App.4th 171, 197; see also *Hernandez v. Lopez* (2009) 180 Cal.App.4th 932, 938-939 [allegations in pleading showed benefit paid to the defendant as consideration for the contract and were sufficient to permit restitution to the plaintiff].) The equitable doctrine of unjust enrichment "applies where the plaintiffs, while having no enforceable contract, nonetheless have conferred a benefit on the defendant which the defendant has knowingly accepted under circumstances that make it inequitable for the defendant to retain the benefit without paying for its value. [Citation.]" (*Hernandez*, *supra*, at p. 938.)

We turn our focus, however, to the court's initial statement that, in prior proceedings on cross-motions for summary judgment, the court gave the Lannings "leave to amend the complaint as to the causes of action for forcible detainer, trespass, and unjust enrichment . . . to name the [T]rust as a plaintiff. The Lannings filed a [TAC] . . . in which the Lannings have done so. However, . . . the Lannings did not stop there, and have added various words and phrases throughout the TAC. . . . [M]ost of the changes . . . are changes concomitant with the addition of a named plaintiff and update the TAC with developments in this case since the SAC was filed . . . . Such amendments are permissible because they merely respond to the court's reason for granting leave to amend. . . . The Lannings have not sought, and the court did not previously grant, leave for the Lannings to add any new claims for damages in the complaint . . . ." The court noted that, for that reason, it was inclined to strike "[e]verything in the TAC ¶74 . . . except the language 'Kramer, WHCCH and SSI have been unjustly enriched as a result of

15

the conduct alleged above by failing to pay rent to the Trust from July 18, 2008 to June 8, 2009. In addition, Kramer, WHCCH and SSI caused over $75,000 in damage[s] to the units in which the Sunset Shop operated while they forcibly detained the same."

We agree that the Lannings' additional claims for unjust enrichment went far beyond the limited scope of the leave to amend to add the Trust as a named plaintiff. (See *Patrick v. Alacer Corp.* (2008)167 Cal.App.4th 995, 1015 [plaintiff's amendment adding a new cause of action was permissible, in that it was within the specified scope of the trial court's grant of leave to amend]; *People ex rel. Dept. of Pub. Wks. v. Clausen* (1967) 248 Cal.App.2d 770, 785 [plaintiff may amend to name new parties where trial court expressly grants leave to do so; plaintiff may not add new parties, however, where, after a demurrer is sustained, plaintiff has been granted leave to amend to state a cause of action].) The Lannings had not obtained leave to amend through a noticed motion for leave to amend before filing the TAC with the added material, as required pursuant to Code of Civil Procedure section 473, subdivision (a)(1). (*Lee v. Bank of America* (1994) 27 Cal.App.4th 197, 217 and fn. 15.) Rather they sought leave to amend as a way to oppose Andrew K.'s motion to strike.

The general policy of liberality in granting leave to amend does not apply where the cause of action or the issues involved in it are "radically changed," or the amendment would "operate to the disadvantage or prejudice of the adverse party." (*Price v. Mason-McDuffie Co.* (1942) 50 Cal.App.2d 320, 325-326.) An amendment should not require a defendant "to answer a wholly different legal liability or obligation from that originally stated." (*Klopstock v. Superior Court* (1941) 17 Cal.2d 13, 20.) The trial court did not abuse its discretion in refusing to grant leave to amend with regard to the cause of action (fifth) for unjust enrichment.

16

### 3. Use of Andrew K.'s Special Verdict Form; Joint and Severable Liability for Intentional Torts

The Lannings contend that the trial court erred in submitting Andrew K.'s special verdict form, which required the jury to specify the amount of damages attributable to each Kramer defendant if the jury found them liable, to the jury and in rejecting all their objections. They claim that, by law, all of the Kramer defendants must be held jointly and separately liable for the total amount of damages assessed by the jury for the intentional torts. According to the Lannings, allowing such apportionment abrogated the principle of joint and several liability of all of the tortfeasors who conspire to commit the same tort.

The Lannings cite *Hughey v. Candoli* (1958) 159 Cal.App.2d 231 as support for their contention, but that case also supports the use of a special verdict form allowing the jury to state the amount of damages caused by each defendant, as Andrew K.'s form did. The *Hughey* court stated that, generally, "'"[w]here several persons act in concert and damages result from their joint tort, each person is held for the entire damages . . . ,"'" and the same result applies even if persons are not acting in concert, but "'"the results produced by their acts are indivisible,"'" such as "'"[d]eath, burning of a building or the sinking of a boat . . . ."'" (*Id.* at p. 240.) The court also stated, however, that if "'"segregation as to causation can be established,"'" each tortfeasor bears "'the burden of establishing that his own wrong did not contribute to the damages, or the extent to which it did so.'" (*Ibid.*) In the instant case, the jury apparently decided that each Kramer defendant met that burden and specified the damages against each defendant accordingly.

The facts do not support the Lannings' claim that the torts produced indivisible results requiring that defendants be held jointly and severally liable for all damages. (See *Hughey v. Candoli*, *supra*, 159 Cal.App.2d at p. 240.) The torts were not single discrete events, but rather they continued over a long period of time. For the duration of the forcible entry and forcible detainer, Andrew K. was present virtually every day, but Rosalinda K. and Matthew K. were not.

17

As Andrew K. points out, the jury was instructed as to the indivisibility of damages caused by defendants if they acted as members of a conspiracy in carrying out the tortious conduct. At the Lannings' request, the trial court instructed the jury on the elements required to find a conspiracy (CACI No. 3600), as well as the indivisibility of the damages caused by a conspiracy (CACI No. 3601, also D-9). The court stated: "If you decide that defendants join the conspiracy to commit the torts . . . , then they are responsible for all acts done as part of the conspiracy, whether they occurred before or after they join the conspiracy."

The Lannings' special verdict form did not request a specific finding as to conspiracy. The form only had one line for entry of damages. The court rejected the Lannings' form, reasoning that the form did not allow for the possibility of the jury finding that the Kramer defendants did not act in a conspiracy and needing spaces for specification of the amount of damages as to each defendant. As the Lannings observed in their opening brief, "[b]ecause the apportionments [in the final verdict] were different [for each Kramer defendant], the only conclusion that reconciles the apportionment is that the jury concluded that there was no conspiracy amongst defendants." The trial court did not err in permitting use of Andrew K.'s special verdict form.

### 4. "Tort of Another" Attorney's Fees

In the TAC, the Lannings amended their prayer for attorney's fees to include fees authorized by "the 'tort of another' doctrine." The jury found that Andrew K., Rosalinda K., and Matthew K. had committed the tort of forcible entry and forcible detainer of the Premises. Among other things, the evidence showed that, on the day of their forcible entry, Rosalinda K. and Matthew K. spoke to the sheriff's deputies who responded to the Lannings' telephone call for help, and Rosalinda K. showed them a copy of the Lease between the Lannings and Andrew K. Upon seeing the Lease, a deputy said that the situation appeared to be a civil matter, and the deputies left. Thereafter, the Lannings filed the UD Action against Andrew K. to regain possession of the Premises. The

18

Lannings sought to recover the attorney's fees they expended in the UD Action from Rosalinda K. and Matthew K. as damages in the Main Action under the "tort of another" doctrine. The trial court ruled that the doctrine did not apply.

On appeal, the Lannings claim the court erred, and the doctrine did apply. The gist of the Lannings' argument is that, but for the wrongful conduct of Rosalinda K. and Matthew K. in representing to the sheriff's deputies that they and Andrew K. had a legal right to be in possession of the Premises under the Lease, the Lannings would not have had to file and prosecute the UD Action. Therefore, the Lannings assert, they are entitled to recover their attorney's fees and costs in the UD Action from Rosalind K. and Matthew K. as damages for their wrongful conduct under the "tort of another" doctrine.

The general rule in tort actions is that the party who employs the attorney pays the attorney's fees, in the absence of some special agreement, statutory provision, or exceptional circumstances. (Code Civ. Proc., § 1021; *Prentice v. North Amer. Title Guar. Corp.* (1963) 59 Cal.2d 618, 620.) The "tort of another" doctrine arises in the exceptional circumstances when a "person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person." (*Prentice*, *supra*, at p. 620.) In such circumstances, the person "is entitled to recover compensation for the reasonably necessary loss of time, attorney's fees, and other expenditures . . . suffered or incurred" in the action against the third person. (*Ibid.*)

Under the "tort of another" doctrine, attorney's fees are awarded as one element of damages suffered by the plaintiff who was required to sue a third person to protect his rights as "the natural and proximate consequence" of the torts committed against the plaintiff by the defendant; the attorney's fees are not "'the measure and mode of compensation of attorneys'" governed by Code of Civil Procedure section 1021. (*Prentice v. North Amer. Title Guar. Corp.*, *supra*, 59 Cal.2d at p. 621; see also *Gray v. Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 505, 507 [a plaintiff may recover attorney's fees "if he is required to employ counsel to prosecute or defend an action

19

against a third party because of the tort of defendant"]; *Behniwal v. Mix* (2005) 133 Cal.App.4th 1027, 1043.) "'Unless the parties stipulate otherwise, a claim for attorney fees under the "tort of another" doctrine . . . must be pleaded and proved to the trier of fact. [Citations.]'" (*Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 79.)

Because the attorney's fees awarded under the "tort of another" doctrine are "in fact an element of tort damages, nearly all of the cases which have applied the doctrine involve a clear violation of a traditional tort duty between the tortfeasor who is required to pay the attorney fees and the person seeking compensation for those fees. [Citations.]" (*Sooy v. Peter* (1990) 220 Cal.App.3d 1305, 1310.) The "tort of another" doctrine does not apply, however, "to the situation where a plaintiff has been damaged by the joint negligence of codefendants." (*Gorman v. Tassajara Development Corp.*, *supra*, 178 Cal.App.4th at p. 80.) The doctrine, as set forth in *Prentice v. North Amer. Title Guar. Corp.*, *supra*, 59 Cal.2d at pages 620 and 621, "'was not intended to apply to one of several joint tortfeasors in order to justify additional attorney fee damages. If that were the rule there is no reason why it could not be applied in every multiple tortfeasor case with the plaintiff simply choosing the one with the deepest pocket as the "*Prentice* target." Such a result would be a total emasculation of Code of Civil Procedure section 1021 in tort cases.'" (*Gorman*, *supra*, at p. 80.)

The trial court properly ruled that the Lannings were not entitled to attorney's fees as "tort of another" damages against Rosalinda K. and/or Matthew K. The TAC alleges that "[b]ecause of the forcible entry and detainer of the Premises by Matthew Kramer, Rosalinda Kramer and their security personnel, the Lannings were forced to retain counsel and cause the Trust to commence a lawsuit [as] an unlawful detainer action against Andrew Kramer to reclaim possession of the Premises." The Lannings did not plead any "tort of another" damages against Rosalinda K. and Matthew K. (*Gorman v. Tassajara Development Corp.*, *supra*, 178 Cal.App.4th at p. 79.) The TAC alleges that all three—Rosalinda K., Matthew K. and Andrew K.—were joint tortfeasors. (*Id.* at

20

p. 80.) The Lannings did not institute the unlawful detainer action against only Andrew K. solely as "the natural and proximate consequence" of the torts of Rosalinda K. and Matthew K. (*Prentice v. North Amer. Title Guar. Corp.*, *supra*, 59 Cal.2d at p. 621.) Thus, the "tort of another" doctrine could not, and did not, apply.

### 5. The Lannings' Motion for Retrial on Damages Only

The Lannings contend the trial court erred in denying their motion for a new trial on damages only. The Lannings do not challenge any of the jury's findings on liability. When the court denies a new trial, we "conduct an independent examination of the proceedings to determine whether a miscarriage of justice occurred." (*People v. Ault* (2004) 33 Cal.4th 1250, 1261-1262, fn. omitted; Cal. Const., art. 6, § 13.)

First the Lannings contend that, as their foregoing claims show, the manner in which the jury answered the special verdict questions on damages is unclear and may be the result of error. As we previously concluded, there was no error.

The Lannings also claim that retrial on the amount of punitive damages is warranted, in that Andrew K. failed to provide sufficient information to allow the Lannings' financial expert to offer evidence of Kramer's current net worth for the jury's consideration in determining the amount of punitive damages to award. The expert was Scott Mowrey, a certified public accountant. He testified that he had received the 2006 and 2007 tax returns for Andrew K., together with some supporting documents and partial statements from brokerage accounts. Mowrey stated the dollar amount, in his opinion, of Andrew K.'s net worth.

During the hearing on punitive damages, counsel for the Lannings never raised an objection, or even mentioned, that the financial information made available to Mowrey was insufficient for the purpose of assessing Andrew K.'s net worth. Counsel was not caught by surprise, however; he had the opportunity to become aware of the alleged insufficiency prior to the hearing. According to his declaration, the court permitted counsel for the Lannings to meet with Mowrey and review the financial information

21

provided by Andrew K. during a break prior to the start of the hearing. By failing to make a timely objection, the Lannings forfeited any error with respect to the punitive damages procedure, including any failure by Andrew K. to provide sufficient financial information for the determination of his net worth. (See, e.g., *City of El Monte v. Superior Court* (1994) 29 Cal.App.4th 272, 280 [plaintiff forfeited objection to punitive damages procedure by failing to object before jury was discharged].)

In any event, substantial evidence would support a finding that the information was sufficient. When a plaintiff attacks the sufficiency of the evidence to support the trier of fact's finding, our power on appeal "'begins and ends with the determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact.' [Citations.]" (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881, italics omitted.) The Lannings' financial expert identified the evidence provided to him and stated the specific dollar amount that, in his opinion, constituted Andrew K.'s net worth. He never mentioned that the information provided to him was, or even appeared to be, insufficient to allow him to render an opinion on Andrew K.'s net worth and counsel for Lanning never questioned him on the issue. That is sufficient for us to determine that there was substantial evidence to support the expert's net worth opinion used by the jury in making its finding. (*Ibid.*)

**B. *Andrew K.'s Contentions***

**1. Res Judicata Effect of the Judgment of Possession in the UD Action**

Andrew K. contends that the jury verdict for $236,613.68 against him in the Main Action must be reversed, in that the judgment in the UD Action was res judicata on the issues of forcible entry and forcible detainer and barred trial on the issues in the Main Action. We disagree.

In both the Main Action and the UD Action, the Lannings stated causes of action against Andrew K. for forcible entry and forcible detainer. The sole remedy obtained in

the UD Action was a judgment of possession.  The judgment of possession in the UD Action did not bar the trial and award on monetary damages in the Main Action.

The primary purpose of an unlawful detainer action (Code Civ. Proc., § 1174) is """"the recovery of the possession of the property.  The recovery of rent is a mere incident to the main object.""""  (*Balassy v. Superior Court* (1986) 181 Cal.App.3d 1148, 1152.)  The landlord may leave recovery of monetary damages to subsequent litigation.  (See *Northrop Corp. v. Chaparral Energy, Inc.* (1985) 168 Cal.App.3d 725, 729.)  The cause of action may be the same in two lawsuits, but remedies sought may be different, "'one not being determinative of the other.'"  (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 682.)  In the UD action, judgment was rendered in the forcible entry and forcible detainer cause of action only as to the remedy of the right of possession; the issue of damages was not litigated.

A judgment operates as res judicata or collateral estoppel in a subsequent action only as to those issues actually litigated.  (*Clark v. Lesher* (1956) 46 Cal.2d 874, 880; 7 Witkin, Cal. Proc. (4th ed. 1997) Judgment, § 313, p. 864, § 354, p. 915.)  Hence, the judgment in the UD Action did not bar the trial on the issue of damages for forcible detainer in the Main Action.  (*Northrop Corp. v. Chaparral Energy, Inc.*, *supra*, 168 Cal.App.3d at p. 729.)

### 2.  Emotional Distress Verdict as to Justin L.

The jury awarded damages of $10,000 against Andrew K., $1,000 against Rosalinda K. and $1,000 against Matthew K. for intentional infliction of emotional distress as to Justin L.  Andrew K. appeals from the trial court's denial of his motion for judgment notwithstanding verdict on the cause of action.  He contends the verdict must be reversed, in that the law does not authorize a cause of action for second-hand emotional distress, i.e., Justin L.'s distress due to watching the toll that the litigation took on his parents.

At the close of direct examination, counsel for the Lannings asked Justin L. to briefly tell why he was asking the jury to award him damages for emotional distress. Justin stated: "Primarily, because to see the rapid aging of my parents throughout this entire litigation process—it's beyond drained my family emotionally, financially, and physically. I've had the burden of helping to support my family through this. And it's been extremely difficult. Also, our quality of life has diminished considerably as a result of the horrific acts and . . . the malicious intent by the defendants."

Prior to that brief statement, Justin had testified that, on July 18, 2008, when he discovered that none of his keys fit the lock to the gate to the Premises, two men who had been hired by Andrew K. as security personnel were standing near him. He asked them what was going on. One of them, who was about six feet four inches in height, said to Justin in an unfriendly manner that "we're not going to play this guessing game." Justin testified that, at that time, he "felt fearful," "felt a big presence over me" and "felt physically scared." He called his father, George L., "frantic, stating that our building had been taken over." When George arrived, Rosalinda K. and Matthew K. approached, and George and Rosalinda got into a heated argument. Four security personnel were present and two were videotaping the scene. Justin said that Rosalinda directed one of the security personnel to "'remove George L. from this Premises immediately.'" Justin felt a physical confrontation was about to break out. He was concerned for George because he had bladder cancer and had recently had heart surgery. Justin observed that his small 61-year-old mother, Nansee L., was very nervous and was physically shaking. Justin testified that he "felt scared" and "uncomfortable." Justin said that he "felt that we were being bullied," "there was a menacing presence" and he was "overwhelmed by the number of people that were against us." Justin stated that he "was not sure whether or not there was weapons or whatever," due to the "large security presence and all the people wearing baggy clothing." When the Lannings first entered the Premises after the judgment of possession had been entered in the UD Action, Justin testified that he was "personally disgusted" and "felt horrified" at the condition of the Premises.

24

The trial court's "power to grant a judgment notwithstanding the verdict is identical to [its] power to grant a directed verdict." (*Hauter v. Zogarts* (1975) 14 Cal.3d 104, 110.) The trial court "cannot weigh the evidence [citation], or judge the credibility of witnesses. [Citation.] If the evidence is conflicting or if several reasonable inferences may be drawn, the motion for judgment notwithstanding the verdict should be denied. [Citations.]" (*Ibid.*) The trial court may properly grant a motion for judgment notwithstanding the verdict "'only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence to support the verdict. If there is any substantial evidence, or reasonable inferences to be drawn therefrom, in support of the verdict, the motion should be denied.' [Citation.]" (*Ibid.*)

A plaintiff may recover damages for intentional infliction of emotional distress if the distress is severe, whether or not the plaintiff suffered any physical injury. (*Hailey v. California Physicians' Service* (2007) 158 Cal.App.4th 452, 476.) Emotional distress is severe if it is "'of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it,'" including "'any highly unpleasant mental reaction such as fright, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment or worry.'" (*Ibid.*) However, "[l]iability for intentional infliction of emotional distress '"does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." [Citation.]' [Citations.]" (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1051.) "A cause of action for intentional infliction of emotional distress must allege facts showing outrageous conduct which is intentional or reckless[,] . . . 'exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind.' [Citations.] . . . Further, although the law appears to be moving toward allowing recovery where mental distress is caused when plaintiff witnesses conduct directed toward a third person, 'thus far recovery is clearly limited to the most extreme cases of violent attack, where there is some especial likelihood of fright or shock.' [Citation.]" (*Ochoa v. Superior*

*Court* (1985) 39 Cal.3d 159, 165, fn. 5, italics omitted; accord, *Christensen v. Superior Court* (1991) 54 Cal.3d 868, 904-905.) Liability for intentional infliction of emotional distress requires "that the defendant's conduct be directed primarily at the plaintiff [which] is a factor which distinguishes intentional infliction of emotional distress from the negligent infliction of such injury," when the defendant's conduct is directed primarily at a third person, such as the plaintiff's child. (*Christensen*, *supra*, at p. 904.)

We agree with Andrew K. that the emotional distress described by Justin L. is insufficient to constitute the severe emotional distress required as a matter of law for liability for intentional infliction of emotional distress. Andrew K. cites *Hughes v. Pair*, *supra*, 46 Cal.4th 1035, in which the court affirmed a lower court's ruling that the defendant was not liable for intentional infliction of emotional distress to the plaintiff based on her claim that she "suffered discomfort, worry, anxiety, upset stomach, concern, and agitation as the result of [the] defendant's [sexually explicit] comments to her" in a telephone call and a brief encounter with him at a museum. (*Id.* at pp. 1040, 1051.) In the other case Andrew K. cites, *Wong v. Jing* (2010) 189 Cal.App.4th 1354, the plaintiff alleged a cause of action for intentional infliction of emotional distress arising from the defendants' disparaging posting about her on the Internet. (*Id.* at p. 1361.) The plaintiff submitted a declaration stating that the Internet posting "'was very emotionally upsetting to me, and has caused me to lose sleep, have stomach upset and generalized anxiety.'" (*Id.* at p. 1377.) The court concluded that the stated conditions were insufficient to constitute intentional infliction of emotional distress. (*Ibid.*)

Viewing the evidence in the light most favorable to Justin L., he and his parents were in the immediate presence of persons whom he feared were about to physically harm himself and/or his parents and appeared to have the ability to inflict harm. They were telling Justin and his parents in a threatening manner to stay off the Premises and forcibly keeping them off property that the Lannings owned by blocking access. The conduct Justin L. described may have gone beyond "'"mere insults, . . . threats, . . . petty oppressions, or other trivialities.'"'" (*Hughes v. Pair*, *supra*, 46 Cal.4th at p. 1051.) The

26

conduct may have been "'very emotionally upsetting'" to Justin L. and caused him to have "'generalized anxiety.'" (*Wong v. Jing*, *supra*, 189 Cal.App.4th at p. 1377.)

Defendants' conduct falls short, however, of being "'of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it.'" (*Hailey v. California Physicians' Service*, *supra*, 158 Cal.App.4th at p. 476.) Defendants' conduct was intentional, but it was not so outrageous as to "'exceed[] all bounds usually tolerated by decent society.'" (*Christensen v. Superior Court*, *supra*, 54 Cal.3d at pp. 904-905.) Justin L. may have been justifiably concerned for the well-being of his parents. The evidence does not show that defendants engaged in an "'"extreme case[] of violent attack [on Justin's parents], where there [was] some especial likelihood of fright or shock."'" (*Id.* at p. 905.) In the absence of such extreme egregious conduct toward his parents, Justin L. cannot recover for intentional infliction of emotional distress based upon any distress, worry or concern arising from defendants' conduct toward his parents. (*Ibid.*) We conclude that the verdict is not supported by substantial evidence and reasonable inferences drawn from it. The trial court erred in denying Andrew K.'s motion for judgment notwithstanding verdict on Justin L.'s intentional infliction of emotional distress claim. (*Hauter v. Zogarts*, *supra*, 14 Cal.3d at p. 110.) The judgment in Justin L.'s favor based upon liability for intentional infliction of emotional distress on him must be reversed and the associated damages awards against Andrew K., Rosalinda K. and Matthew K. must be vacated.

## II
## NOTE ACTION

Andrew K. filed the Note Action, alleging the Lannings defaulted on the promissory note securing the $1 million deposit he paid them toward the purchase of the Sunset Building while the Main Action was still in progress. The complaint alleged causes of action for breach of the promissory note and money had and received.

After the jury verdict in the Main Action, the Lannings filed a demurrer in the Note Action. The grounds for the demurrer were that Andrew K.'s claims were required to be pleaded as a compulsory cross-complaint in the Main Action, and because they were not so pleaded, then pursuant to Code of Civil Procedure section 426.30, subdivision (a), Andrew K. was barred from raising them in a subsequent action. On that basis, the trial court sustained the demurrer without leave to amend and subsequently entered a judgment of dismissal.

"On review from an order sustaining a demurrer, 'we examine the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory, such facts being assumed true for this purpose. [Citations.]' [Citation.]" (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.) When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff. [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) "On appeal from dismissal following a sustained demurrer, we take as true all well-pleaded factual allegations of the complaint. [Citation.]" (*Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490, 495-496.)

In his complaint in the Note Action, Andrew K. alleged that in September 2006, he entered into a lease with the Lannings for his use of a portion of the Sunset Building for the Dispensary. In January 2007, he proposed to purchase the Sunset Building from the Lannings and entered into an escrow agreement with them. As the agreement required, he deposited $600,000 with the Lannings, to be returned to him if he could not close escrow by August 7, 2007. In return, the Lannings executed a promissory note to him as security for the return of his deposit (First Note). Thereafter, the parties entered into a written agreement to increase the deposit to $1 million, amend the First Note

28

accordingly, and extend the date for close of escrow to October 31, 2007. Andrew K. paid the Lannings the additional deposit amount.

Andrew K. was unable to close escrow by the agreed upon date. The Lannings began repaying the First Note. As of April 19, 2008, the balance due and payable to Andrew K. was $408,000. The Lannings made no payment on the debt after that date. When the term of the First Note expired, Andrew K. demanded payment from the Lannings. Rather than paying him, the Lannings gave him a promissory note for $408,000, "due and payable by February 28, 2009," plus a two and a half percent penalty (Second Note). The Lannings never made a payment to Andrew K. under the Second Note. On April 1, 2010, Andrew K. filed the Note Action to recover under the Second Note.

Andrew K. contends on appeal that his causes of action based upon the promissory note debt are not related to the transactions being litigated in the Main Action and, therefore, the trial court erred in determining that he was required to raise the causes of action in a compulsory cross-complaint in the Main Action. He maintains that the failed Sunset Building purchase giving rise to the promissory note debt is entirely separate from, and unrelated to, the dispensary business and lease transactions which are the basis for the causes of action in the Main Action. We disagree.

Under Code of Civil Procedure section 426.30, subdivision (a), a defendant must allege "any related cause of action which (at the time of serving his answer to the complaint) he has against the plaintiff" in a cross-complaint and may not subsequently assert the related cause of action in another lawsuit. A "'[r]elated cause of action'" is "a cause of action which arises out of the same transaction, occurrence, or series of transactions or occurrences as the cause of action which the plaintiff alleges in his complaint." (*Id.*, § 426.10, subd. (c).) At any time during the proceedings on the complaint, a defendant who initially fails to file such a cross-complaint may request leave to file the cross-complaint, and the court must grant the request if the defendant "acted in good faith" in failing to file earlier. (*Id.*, § 426.50.) With regard to the compulsory cross-

29

complaint statutes (*id.*, §§ 426.10-426.50), the California Supreme Court explained, "The law abhors a multiplicity of actions, and the obvious intent of the Legislature in enacting the . . . statutes [citation] was to provide for the settlement, in a single action, of all conflicting claims between the parties arising out of the same transaction. [Citation.] Thus, a party cannot by negligence or design withhold issues and litigate them in successive actions; he may not split his demands or defenses; he may not submit his case in piecemeal fashion. [Citation.]" (*Flickinger v. Swedlow Engineering Co.* (1955) 45 Cal.2d 388, 393.)

The record reveals that Andrew K. recognized that the causes of action in the Main Action were related to those in the Note Action. In support of his motion for summary judgment in the Main Action, Andrew K. submitted a separate statement of undisputed facts. Undisputed facts numbered 12 through 18 were the same facts he alleged in the Note Action. At the summary judgment hearing, Andrew K. argued that the Lannings did not need to recoup any consideration they paid under the Deal Points Memo, because the Lannings already had received money from Andrew K. as his deposit on the failed purchase of the Sunset Building, and they had not returned it to Andrew K.[7]

Andrew K. asserted the promissory note debt as a defense in the Main Action. In his answers to both the SAC and the TAC, he asserted the promissory note debt as an affirmative defense to "offset" to any liability assessed against him in the Main Action.[8] In addition, in a hearing in the Main Action, Andrew K. asserted the Note Action as the

---

[7] At the summary judgment hearing, Andrew K.'s counsel also orally requested the court to grant leave for "the opportunity to file a cross-complaint on the basis of the promissory note that has recently matured." The court said that would have to be made as a written motion.

[8] Andrew K.'s answers to both the SAC and the TAC asserted as an affirmative defense: "To the extent that any sums are determined to be due and owing to [the Lannings], and any of them, by . . . Andrew Kramer, . . . Andrew Kramer is entitled to an offset in an amount equal to all sums due and owing to [him] by [the Lannings]."

basis for his request for a stay of enforcement of the monetary award in favor of the Trust in the Main Action.

Andrew K. was aware of the possible need to file a cross-complaint in the Main Action. In the same hearing at which he asserted the Note Action as reason to stay enforcement in the Main Action, the Lannings' counsel asserted that Andrew K.'s claims in the Note Action were related to the Main Action and should be brought as compulsory cross-claims in the Main Action. That Andrew K. had considered, but rejected, the cross-complaint procedure is indicated by the response of his counsel that Andrew K. had "elected to pursue those claims separately." The court denied the requested stay and said that the judgment in the Main Action could possibly provide the basis for issue preclusion or res judicata in the Note Action.

Cases that Andrew K. discusses do not support his contentions. Rather they support the applicability of the compulsory cross-complaint in the instant litigation. All of the cases involve transactions which the court determined were sufficiently related that the compulsory cross-complaint statute would bar a second lawsuit. (E.g., *Hulsey v. Koehler* (1990) 218 Cal.App.3d 1150, 1154-1156 [first action on escrow instructions and a deposit receipt and second action on a promissory note for the purchase of a motorhome]; *Ranchers Bank v. Pressman* (1971) 19 Cal.App.3d 612, 615, 621 [automobile agency purchase involving a promissory note to an individual in the first action and a financing agreement with a bank in a second action]; *Sylvester v. Soulsburg* (1967) 252 Cal.App.2d 185, 186-188, 193 [a real estate purchase contract and a chattel mortgage as security, with the first action for foreclosure of the chattel mortgage where the defendant buyers answered by alleging fraud and trespass against the sellers and the second action by the buyers against the sellers for trespass].

As support for his claim that no compulsory cross-complaint was required, Andrew K. quotes from *Align Technology, Inc. v. Tran* (2009) 179 Cal.App.4th 949 that, "'[a]t the heart of the [logical relationship] approach'" to determining whether a cross-complaint is compulsory "'is the question of duplication of time and effort; i.e., are any

factual or legal issues relevant to both claims? [Citation.]' [Citation.]" (*Id.* at p. 960.) Andrew K. contends that "[t]here is no overlap of relevant facts" and "no claim or defense relevant to the promissory note [which is at issue in the second action] arises from the parties' landlord-tenant relationship, nor from their relationship with respect to operation of the business [which are at issue in the first action]."

Andrew K.'s contention lacks merit, as shown by his use of the promissory note debt in his claims and defenses in the Main Action. As the *Align Technology* court also stated, "Because of the liberal construction given to the [compulsory cross-complaint] statute to accomplish its purpose of avoiding a multiplicity of actions, 'transaction' is construed broadly; it is 'not confined to a single, isolated act or occurrence . . . but may embrace a series of acts or occurrences logically interrelated [citations].' [Citation.]" (*Align Technology, Inc. v. Tran*, *supra*, 179 Cal.App.4th at p. 960.) The Note Action clearly is barred by Code of Civil Procedure sections 426.10, subdivision (c), and 426.30, subdivision (a).

For that reason, Andrew K.'s complaint failed to state a cause of action under any legal theory and the trial court properly sustained the Lannings' demurrer. (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors*, *supra*, 48 Cal.4th at p. 42.) In view of the statutory bar, there is no reasonable possibility that the defect can be cured by amendment and, therefore, the trial court did not abuse its discretion in sustaining the demurrer without leave to amend the complaint in the Note Action. (*Blank v. Kirwan*, *supra*, 39 Cal.3d at p. 318.)

### DISPOSITION

In *Lanning v. Kramer*, No. B227686, the judgment is reversed with respect to the judgment in favor of Justin L. on intentional infliction of emotional distress. In all other respects, the judgment is affirmed and the parties shall bear their own costs on appeal. In

*Kramer v. Lanning*, No. B231249, the judgment is affirmed and defendants shall recover their costs on appeal.


JACKSON, J.


We concur:


WOODS, Acting P. J.


ZELON, J.


33